FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 1 6 2011

BROOKLYN OFFICE

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
MIGUEL LAMPON,                                              :
                                        Petitioner,         :      **MEMORANDUM**
                                                            :      **DECISION AND ORDER**
                        - against –                         :
                                                            :      10 Civ. 2591  (BMC)
                                                            :
T. LAVALLEY, Superintendent, Clinton                        :
Correctional Facility,                                      :
                                        Respondent.         :
                                                            :
                                                            :
------------------------------------------------------------ X

**COGAN**, District Judge.

This matter is before the Court on a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging petitioner's conviction for second degree murder under N.Y. Penal

Law § 125.25[2] (depraved indifference).  It is one of a number of habeas cases filed in this

district that fall on the spectrum of the evolutionary process of New York law concerning

depraved indifference murder, which process culminated in the New York Court of Appeals'

decision in Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (2006).  In the instant case, petitioner was

convicted and his appeal fully briefed before the Feingold decision, but the Appellate Division

affirmed his conviction based on his failure to preserve his sufficiency of the evidence objection,

and the New York Court of Appeals denied leave to appeal, after the Feingold decision.

There seems little question on the facts adduced at trial that petitioner could not have

been guilty of depraved indifference murder under the Feingold standard, but rather, could only

have been convicted of intentional murder, a charge which the jury did not reach, choosing

instead depraved indifference murder.  The questions before me are thus: (1) does the Appellate

Division's invocation of a procedural bar preclude my review of petitioner's claim; or (2)

alternatively, if it does not, did the Appellate Division commit federal constitutional error by not applying Feingold retroactively to vacate petitioner's conviction? I answer the first question in the affirmative and, alternatively, the second in the negative, and therefore deny the petition.

## **BACKGROUND**

The facts surrounding the crime can be simply stated. On July 19, 2001, after spending the night drinking heavily and arguing with his friend or acquaintance, David Garcia, petitioner walked into a bedroom in his apartment where Garcia had fallen asleep, put a pillow over Garcia's head, and shot him twice in the head with a .22 caliber rifle, killing him. According to petitioner's testimony at trial, he did this because the drinking had put him under the delusion that when Garcia woke up, he was going to kill petitioner. A few hours after shooting Garcia, petitioner shot himself in the chest with the rifle and then called 911 for an ambulance.

Petitioner was charged with Intentional Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), Depraved Indifference Murder in the Second Degree (N.Y. Penal Law § 125.25[2]), and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01).

## I.      Proceedings in the Trial Court

At trial, defense counsel adopted a multi-tiered strategy to defend the case. From a factual perspective, he sought to convince the jury that petitioner was too intoxicated to form the requisite intent for intentional murder. From a legal perspective, he sought to have the trial court dismiss the depraved indifference murder charge on the ground that petitioner's acts, were, if anything, intentional, and thus could not satisfy the "recklessness" element of depraved indifference. Recognizing that the success of this strategy would mean petitioner's acquittal of all charges despite shooting someone in the head, and thus be unlikely to succeed, trial counsel

had a fallback position. If the trial court denied his motion to dismiss the depraved indifference charge, he would request submission of the charge of second degree manslaughter, a lesser included offense to depraved indifference murder, to which intoxication was not a defense, but for which the penalty was substantially less than either of the murder charges. Thus, conceivably, if the jury accepted his intoxication defense to negate intent, and further found that the circumstances of the offense were not sufficiently heinous to constitute depravity, petitioner might walk away with only a second degree manslaughter conviction.

Implementing this strategy, petitioner's trial counsel challenged the sufficiency of the evidence on the depraved indifference count at the close of the prosecutor's case:

> I respectfully move for a trial order of dismissal as to the second count of the indictment which alleges Murder in the Second Degree caused under a theory that the defendant acted under or showed a depraved indifference to human life. That's essentially the mens rea of recklessness, I don't think there is any reasonable view of the evidence that would support the jury find[ing] that he acted recklessly under the circumstances and, in fact, the People's theory of prosecution from the very moment of its opening statement until the closing and the introduction of the defendant's audiotaped statement was that he acted intentionally and deliberately, that he sought to bring about a cause, the death of David Garcia and with intent that the end result be the death of David Garcia he fired at close range with a rifle twice into the back of the defendant's head, causing death as the medical examiner indicated. There is no credible evidence that I can give or that any jury can give to sustain a theory that the defendant's act of shooting twice at close range into the back of the head of the deceased was a reckless act, therefore, I'm asking you to dismiss that count as a matter of law at this time.

The trial court denied the motion. Next, during petitioner's case-in-chief, the trial court held what it called a "limited pre-charge conference." There, defense counsel requested a charge for the lesser-included offense of second degree manslaughter. The trial court denied that as well.

At the close of all of the evidence, defense counsel renewed his objection to the sufficiency of the evidence as to the depraved indifference charge:

> I respectfully move for a trial order of dismissal as to the second count of the
> indictment charging Murder in the Second Degree by depraved indifference on
> the grounds that the People have failed to prove beyond a reasonable doubt all the
> elements of that crime. They failed to prove that the act was reckless as opposed
> to intentional. . . . All the acts ascribed to the defendant are intentional acts. It's a
> far stretch to say that it was a reckless act and therefore I belief that the necessary
> element of recklessness has not been proved beyond a reasonable doubt, so I ask
> you to dismiss it on the additional ground that the People should make an election
> at the end of the case, they certainly should know whether or not their theory of
> prosecution is that the defendant acted intentionally or whether he acted
> recklessly with depraved indifference to human life and if they can't make that
> election at this point then that's a further indication of a lack of confidence in the
> case and lack of proof beyond a reasonable doubt as to the second count.

This motion was also denied.

With regard to the jury charge, defense counsel requested, and the trial court granted, a charge to the effect that intoxication could negate the intent required for deliberate murder or first degree manslaughter. The trial court made it clear in its charge, however, that intoxication applied only to the intentional murder and first degree manslaughter charges (the trial court determined to submit first degree manslaughter to the jury as a lesser included offense to intentional murder), and that intoxication was not relevant to nor could it negate the "recklessness" requirement of depraved indifference murder.

After the trial court charged the jury but before it began deliberations, defense counsel again objected to the submission of the depraved indifference charge to the jury, stating: "I take exception to your charging depraved indifference murder under Section 125.25. I don't think this case is a depraved indifference murder, it is an intentional murder case but certainly not the first [count listed on the verdict form], depraved indifference." Defense counsel also again complained that the trial court had denied his request to submit the lesser included offense of second degree manslaughter. The trial court denied these objections.

The verdict form, over defense counsel's objection, listed depraved indifference murder as the first count, with intentional murder as the second count and first degree manslaughter as the third count, and the trial court instructed the jury that if it found petitioner guilty of depraved indifference murder, it should not reach the other counts. The jury found petitioner guilty of depraved indifference murder, and on September 5, 2002, the trial court sentenced petitioner to fifteen years to life.

## II.    Appellate Division Proceedings

In the Appellate Division, appellate counsel took a different approach than had trial counsel to the depraved indifference count. Although continuing to assert, as had trial counsel, that the facts could only be interpreted as intentional, not reckless disregard, appellate counsel, relying on several decisions handed down after petitioner's conviction (one came down one month before), see People v. Suarez, 6 N.Y.3d 202, 811 N.Y.S.2d 267 (2005); People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004); People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224 (2004); People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572 (2003); People v. Sanchez, 98 N.Y.2d 373, 748 N.Y.S.2d 312 (2002), also challenged the adequacy of the proof to show the "depraved indifference" requirement of the statute. As discussed below, these decisions had curtailed the ability to use the depraved indifference murder statute in-on-one murders, focusing on the perpetrator's subjective state of mind rather than the circumstances surrounding the offense in measuring depravity. Perhaps recognizing that appellate counsel's approach might present a preservation problem, appellate counsel's brief was structured to make it appear that "depraved indifference" and "reckless disregard" were essentially the same point. However, it was clear that Suarez and its predecessors concerned only the former, not the latter.

Because of that, the Appellate Division declined to consider this attack on the "depraved indifference" requirement that these new cases had addressed, finding that the argument had not been preserved below because trial counsel had challenged only the recklessness element. In a decision dated March 13, 2007, the Court held:

> The defendant moved for dismissal of the depraved indifference count . . . on the ground that the People's evidence of the defendant's conduct was not consistent with "recklessness." The defendant did not specifically argue in his dismissal motions that the People's evidence was inconsistent with "depraved indifference."
> . . .
>
> There was evidence of intoxication presented at trial which the jury could have found negated the defendant's intent to kill without negating the defendant's reckless state of mind. Accordingly, the defendant's arguments that the trial evidence was not consistent with a reckless state of mind were, in effect, rejected by the jury. Viewed in this context, the defendant's motions to dismiss, which were limited to recklessness without addressing depraved indifference failed to preserve with sufficient specificity the issue now raised on appeal.

People v. Lampon, 38 A.D.3d 682, 832 N.Y.S.2d 252 (2d Dep't) (citations omitted), leave to appeal denied, 9 N.Y.3d 991, 848 N.Y.S.2d 609 (2007).

For reasons that will become clear below, it is noteworthy that petitioner's brief to the Appellate Division was filed January 18, 2006; respondent's reply was filed April 11, 2006.

## III.   Leave to Appeal to the Court of Appeals

In seeking leave to appeal, appellate counsel introduced yet another formulation. His motion argued that another issue was "whether sufficiency of proof of depraved indifference to human life may be affected by concomitant proof of a defendant's intoxication and emotionality." Arguing for an affirmative answer to the issue as posed, his point of error was the trial court erred in refusing to submit the second degree manslaughter charge to the jury.

Appellate counsel conceded that he had not asserted this point of error in the Appellate Division. He asserted, however, that this was "for good reason." The reason was that only after petitioner's trial had the New York Court of Appeals decided Feingold. (To refresh us to the timing: petitioner's brief had been filed on January 18, 2006; respondent's opposing brief was filed on April 11, 2006; Feingold was decided on July 5, 2006; oral argument of the appeal was held on September 29, 2006; and the Second Department decided petitioner's appeal on March 13, 2007.) Appellate counsel thereby all but stated that the Appellate Division had done nothing wrong by applying the law as it stood at the time of petitioner's conviction – because appellate counsel had never asked the Appellate Division to do anything else – and he attempted to justify his failure to call Feingold to the Appellate Division's attention by claiming that the timing of the appeal did not permit it. Instead, his approach was that his new argument regarding the impact of intoxication on depraved indifference murder presented a "preserved, reviewable issue of statewide interest and first impression," on the view that he could not have asserted it earlier.

However, after the respondent argued that the motion for leave was an attempted end-around the failure to preserve the depraved indifference mens rea issue, petitioner, in his reply, argued for the first time that the Court of Appeals should apply Feingold retroactively, and that the Due Process Clause of the U.S. Constitution required it to do so.[1] The argument seems to have been that since the Due Process Clause requires proof of every element of a crime, and Feingold redefined the elements of depraved indifference murder, the failure to apply Feingold on direct appeal would be unconstitutional. Appellate counsel did not attempt to reconcile this argument with the one in his original application which did not assert any error in the Appellate

---

[1] As petitioner's appellate counsel later stated in his §440.10 proceeding, "[petitioner's] principal argument in support of his leave application was in his first follow-up letter."

Division's invocation of a procedural bar, appealing instead to the Court of Appeals' discretion to grant leave.

The Court of Appeals denied leave. Petitioner moved *pro se* for reargument, filing at least three letters, contending that the Appellate Division erred in not applying Feingold retroactively to the deliberate indifference element of his conviction, and that the procedural bar was improperly invoked. The Court of Appeals denied that motion as well.

## IV.    The § 440.10 Motion

Petitioner subsequently filed a motion to vacate his sentence under N.Y. C.P.L. § 440.10. It repeated his point that the trial court erred in not submitting the second degree manslaughter count to the jury. The basic argument was that since Feingold was decided after petitioner's direct appeal brief was filed in the Appellate Division, petitioner had no way of calling the case to the Appellate Division's attention, and thus § 440.10 was the appropriate mechanism – the only mechanism – for obtaining the retroactive application of Feingold.

The § 440.10 Court disagreed. It pointed out that petitioner had over a year – between the date that Feingold was decided and the date the Appellate Division affirmed his conviction – to move for leave to make a post-argument submission. It further noted that while the Court of Appeals had decided Feingold after petitioner's appellate brief was filed, Feingold was decided several months before the oral argument, and thus petitioner could have made a pre-argument supplemental submission.[2] It therefore held that collateral review was unavailable to address a point that could have been raised on direct appeal. Finally, the § 440.10 Court noted, in the alternative, that petitioner's claimed point of error – that the trial court should have submitted

---

[2] In fact, petitioner had a filed a letter noting supplemental authority before oral argument in the Appellate Division, but it pertained to a recently decided Third Department case, not Feingold.

second degree manslaughter to the jury based on Feingold – was "a non-sequitur." This was because if Feingold applied, the depraved indifference charge could not have been submitted to the jury, and there thus would certainly be no basis for submitting a lesser included offense to it.

The Appellate Division denied leave to appeal the § 440.10 court's order.

## DISCUSSION

Numerous courts, state and federal, have meticulously traced the evolution of New York's depraved indifference murder statute from People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599 (1983), through Feingold. See People v. Valencia, 14 N.Y.3d 927, 932 N.E.2d 871(2010); Policano v. Herbert, 7 N.Y.3d 588, 859 N.E.2d 484 (2006); Fore v. Ercole, 594 F.Supp.2d 281 (E.D.N.Y. 2009). I will not repeat that discussion here; it can be summarized by noting that Under New York law, depraved indifference murder includes four elements: "defendant (1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." Policano v. Herbert, 7 N.Y.3d 588, 602, 825 N.Y.S.2d 678, 688 (2006). Before Feingold, the mental state of depraved indifference murder was recklessness and the fourth element describing "depraved indifference" was determined by an objective analysis of the factual circumstances surrounding the crime. Post-Feingold, the depraved indifference element requires a subjective mental state.

For our purposes, it suffices to note that neither Register nor Feingold dealt with the first requirement of the depraved indifference statute – that the defendant "recklessly" engage in conduct that creates a grave risk of death. They only dealt with the fourth element – depraved indifference. Because these are distinct requirements under the statute, this habeas corpus case

can be readily disposed of on two grounds: (1) the Appellate Division properly invoked a state procedural bar, as trial counsel only preserved his objection to the definition of "recklessly," not "depraved indifference"; or (2) any failure of the state court to retroactively apply Feingold does not present a federal constitutional issue.

## I. The Appellate Division Properly Invoked a State Procedural Bar

A federal court should not address a petitioner's habeas claim if a state court has rejected the claim on "'a state law ground that is independent of the federal question raised and adequate to support the judgment.'" See Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877 (2002) (emphasis added) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991)). When a state court dismisses a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar constitutes an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30, 749-50; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376. There can be no dispute that N.Y. Crim. Proc. Law § 470.05(2), New York's "contemporaneous objection" rule, is firmly established and regularly followed in New York criminal practice. See, e.g., Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007). It is equally well-established under New York law that a motion to dismiss preserves only those grounds referred to in the motion, not other grounds. See People v. Gray, 86 N.Y.2d 10, 629 N.Y.S.2d 173 (1995) ("We noted in People v Cona (49 NY2d 26, 33, n 2) that even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error which, here, is the failure of the People to show that the defendants had knowledge of the weight of the contraband.")

In the instant case, trial counsel asserted only the absence of recklessness, not the absence of depraved indifference. Although petitioner's appellate counsel attempted to excuse this narrow motion because Feingold had not yet been decided, New York law required more. This is clear from the Court of Appeals' later decision in People v. Jean-Baptiste, 11 N.Y.3d 539, 901 N.E.2d 192 (2008), where it held that the same issue had been adequately preserved, and thus applied Feingold retroactively on direct appeal.

In Jean-Baptiste, the defendant intervened in a fight at a party and pulled a gun. He attempted to shoot his cousin's assailant twice from a distance of less than two feet, but the gun misfired. He then pulled the trigger a third time, the gun went off, and the assailant died from a gunshot wound to the chest. For this, the defendant was charged with intentional murder, depraved indifference murder, and first degree manslaughter, and was convicted of depraved indifference murder. At the time of his trial, Feingold had not been decided, and the trial court instructed the jury on depraved indifference murder pursuant to Register. Nevertheless, in moving to dismiss the deliberate indifference count, trial counsel did not confine himself to the recklessness element of the statute, arguing, in addition, that the circumstances surrounding the shooting were not sufficient to constitute depraved indifference. He asserted that there was "no evidence that respondent's act of firing the pistol was 'such an outrage, and so reckless and wanton that it could sustain that murder charge of reckless homicide,'" and that "'there [was] nothing in this record to . . . show that the shooting was of such a nature that the jury [could] deliberate upon the wantonness[,], upon the outrageous[,] upon the the type of crime that would suggest that the jury would find [respondent] guilty of second degree murder.'" Brief for Defendant-Respondent, People v. Jean-Baptiste, 11 N.Y.3d 539, 901 N.E.2d 192 (July 16, 2008), 2008 WL 5040895 at *11 (quoting record on appeal).

The Court of Appeals rejected the District Attorney's attempt to invoke a procedural bar. Because trial counsel had attacked the circumstantial evidence component of the depraved indifference requirement, the very object of the later decision in Feingold, the Court of Appeals held that "the defendant made a specific motion to dismiss for legal insufficiency at trial, anticipating the change in the law brought [subsequently] by Feingold." People v. Jean-Baptiste, 11 N.Y.3d at 544, 872 N.Y.S.2d at 705. The Court went on to hold that Feingold should be applied retroactively to cases on direct appeal if "the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction." Id. at 642, 872 N.Y.S.2d at 703. It therefore reversed the conviction for deliberate indifference murder.[3]

Here, petitioner's trial counsel did not "anticipat[e] the change in the law brought by Feingold," as Jean-Baptiste's trial counsel did, by arguing that petitioner did not act with depraved indifference. There is no legal reason (there may have been a factual reason) that petitioner's counsel could not have made the same objection as Jean-Baptiste's counsel. The "evolutionary process" of deliberate indifference murder had already begun a month before petitioner's trial with the Court of Appeals' decision in People v. Sanchez, 98 N.Y.2d 373, 748 N.Y.S.2d 312 (2002). Petitioner's trial counsel simply utilized a different strategy, outlined above, to focus on the recklessness element of the depraved indifference statute.

Applying the factors under Monroe v. Kuhlman, 433 F.3d 236, 242 (2d Cir. 2006), I can see nothing exorbitant about the Appellate Division's invocation of a procedural bar. The New York Court of Appeals has required anticipation of a change in the law to receive the benefit of retroactive application of a new statutory interpretation. In People v. Gray, 86 N.Y.2d 10, 629

---

[3] The Appellate Division had reduced the conviction to second degree manslaughter, which the Court of Appeals affirmed.

N.Y.S.2d 173 (1995), for example, a decision on a number of cases consolidated for appeal, the Court considered whether a general insufficiency objection adequately preserved a claim that the prosecution had failed to prove knowledge of drug quantity, a requirement that the Court had imposed after the Gray convictions, but before their appeal, in People v. Ryan, 82 N.Y.2d 497, 605 N.Y.S.2d 235 (1993). Prior to Ryan, there was no scienter requirement with respect to the weight element of a drug possession charge; the prosecution only had to show that the drugs did in fact meet the weight requirement charged. In reaching its result in Gray, the Court of Appeals discussed a long line of cases requiring specific preservation and held that such preservation was required to obtain retroactive application of subsequent statutory interpretations.

Significantly, one of the Gray cases, referred to as "Gordon," was a drug possession case where the defendant was arrested with fifty vials of crack cocaine, which laboratory tests showed contained 1493 milligrams of cocaine. There was no direct evidence that the defendant knew the weight that he was carrying. His trial counsel requested, and received, two supplemental jury instructions stating that before it could convict, the jury had to find that he "knowingly" possessed more than 500 milligrams, but trial counsel did not seek to dismiss on the ground that the evidence was insufficient to find that the defendant knew of the weight; he made only a general insufficiency objection. The Appellate Division found inadequate evidence to support a finding of knowledge, and held that the general insufficiency objection, coupled with the requested jury instructions, was adequate to preserve the issue. The Court of Appeals, however, reversed for failure to preserve. It reasoned:

> [W]e hold that preservation is required in these cases. The preservation mandate
> is not new. . . . [E]ven where a motion to dismiss for insufficient evidence [is]
> made, the preservation requirement compels that the argument be "specifically
> directed" at the alleged error . . . . [N]o due process violation occur[s] where a
> defendant [is] convicted upon proof sufficient to satisfy the court's charge where

the defendant failed to preserve his attack upon the charge. . . . [W]e [have] stressed that "where the issue is fully preserved for our review, the knowledge requirement is applicable to the [specified criminal possession and criminal sale charges]."

86 N.Y.2d at 19, 629 N.Y.S.2d at 175 (citations omitted).

In the instant case, in addition to the lack of preservation at the trial level, the Appellate Division's invocation of a procedural bar was doubly appropriate because appellate counsel never asked the Appellate Division to retroactively apply Feingold. Like the § 440.10 court, I can see no reason why this could not have been done; there were ample opportunities, both before and after argument, to bring Feingold to the Appellate Division's attention. Indeed, on February 24, 2006, before the submission of the District Attorney's brief, appellate counsel filed a letter notifying the Second Department of supplemental authority and brought a recently decided Third Department case to the attention of the Appellate Division. The same was not done after the Court of Appeals decided Feingold.

To find that the Appellate Division nevertheless exorbitantly applied a procedural bar would mean that the Appellate Division had an obligation to sua sponte apply Feingold. Petitioner has pointed to no cases, and I have found none, requiring such unilateral action. In Gray, at least, the appellants asked for the retroactive application of Ryan in the Appellate Division, and although the Court of Appeals reversed those cases within Gray that had applied Ryan without preservation, it made it clear nothing would prevent an appellant with an unpreserved claim from appealing to the Appellate Division's discretionary "interest of justice" jurisdiction to obtain that result.

Finally, to the extent that petitioner is claiming that the New York Court of Appeals committed constitutional error by not granting leave to appeal and apply Feingold retroactively,

that argument fails for numerous reasons. The failure to object to the standard of depraved indifference at trial and the failure to rely on Feingold in the Appellate Division each constituted grounds for the Court of Appeals to deny leave. The fact that petitioner presented an entirely different theory in his motion for leave to appeal, arguing for the first time that the trial court erred in not submitting second degree manslaughter, was another ground to deny leave to appeal. Most importantly, however, is that to the extent there is any obligation to apply new decisional law retroactively on appeal, that obligation is on the Appellate Division, not the New York Court of Appeals. This is because the Court of Appeals is a certiorari court; it has no obligation to correct every error that comes before it. Where the trial court has had no opportunity to address an alleged error – even one that anticipates a change in the law – the Court of Appeals has no question before it to consider. See Gray, 86 N.Y.2d at 20-21, 629 N.Y.S.2d at 922 ("Under article VI, § 3 of the New York State Constitution, the Court of Appeals, with limited exceptions, is empowered to consider only 'questions of law.' The chief purpose of demanding notice through objection or motion in a trial court, as with any specific objection, is to bring the claim to the trial court's attention. A general motion fails at this task.") (citation omitted).

## II.    No Grounds Exist for Avoiding the Procedural Bar

Since the Appellate Division properly relied on a procedural bar in this case, the issue becomes whether any ground exists for reaching the merits notwithstanding that procedural bar. Procedural default on state law grounds may, however, be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038 (1989) (citations omitted).

A fundamental miscarriage of justice is characterized as "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496. The Supreme Court has delineated a "specific rule" for determining whether the fundamental injustice exception is met: "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851 (1995)). "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Schlup, 513 U.S. at 328 (quotations and citation omitted). Although this exception requires the reviewing court to look at all the evidence, the petitioner must present new evidence of actual innocence for the fundamental injustice exception to apply at all. See Schlup, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.")

Petitioner does not claim cause or prejudice for his procedural default. He does, however, assert that his conviction constitutes a miscarriage of justice because he is actually innocent. His theory is that the facts of his case, viewed under the standard of Feingold, would not support a conviction for depraved indifference murder if he were retried today. He is correct as to the result that would obtain if Feingold were applied to the facts here today, but in my view,

he is not actually innocent and there is no miscarriage of justice in the constitutional sense by reason of his conviction.

"'Actual innocence' means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir.2002) (quoting Bousley, 523 U.S. at 623, 118 S. Ct. 1604 (1998); see also Calderon v. Thompson, 523 U.S. 538, 559, 118 S. Ct. 1489 (1998) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.") The Supreme Court has held that "'[a]ctual innocence' requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851 (1995); see also Calderon, 523 U.S. at 559, 118 S. Ct. 1489. Thus, in order to demonstrate actual innocence, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327, 115 S. Ct. 851; Dunham, 313 F.3d at 730. As the Supreme Court noted in Bousley, "to sustain an 'actual innocence' claim, the petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him *in the light of the new evidence.*" Bousley, 523 U.S. at 630 (quoting Schlup, 513 U.S. at 327) (emphasis in original).

As the authorities set forth above point out, actual innocence is a factual matter, not a re-application of the same facts to a changed law. It requires new evidence, or at least the exclusion of previously admitted evidence, to avoid a procedural bar. It cannot apply to a mere change in the law required to obtain a conviction unless there was something constitutionally defective about the law at the time of conviction. A federal habeas corpus petition is not a retrial under more favorable, but not constitutionally required, statutory law. Nor is actual innocence a backdoor method of broadening the scope of retroactivity to encompass collateral review.

This conclusion follows from two fundamental principles. First, it is axiomatic that federal habeas review is limited to the correction of errors that have resulted in the unconstitutional conviction or sentence of a defendant. See Swarthout v. Cooke, --- S. Ct. ---, 2011 WL 197627, at *3 (Jan. 24, 2011) (quoting Engle v. Isaac, 456 U.S. 107, 121, 102 S. Ct. 1558, n.21 (1982)); Rivera v. Illinois, 129 S. Ct. 1446, 1454 (2009) ("Thus, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution."); Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Federal courts thus do not sit as roving equity tribunals to impose their own notions of fairness on state courts. Second, there is no federal constitutional requirement that a state to retroactively apply a new interpretation of its own law, at least as long as the change in the state law is not based on an existing constitutional infirmity. See American Trucking Associations, Inc. v. Smith, 496 U.S. 167, 177, 110 S. Ct. 2323 (1990) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."); Wainwright v. Stone, 414 U.S. 21, 23-24, 94 S. Ct. 190 (1973).

Thus, if the New York Court of Appeals had reached the opposite result in Jean-Baptiste, holding that Feingold should only apply to cases tried after its issuance, that holding would present no federal constitutional issue. Feingold, after all, was not premised on any notion that Register deprived defendants of due process of law; the words "due process," "fundamental fairness," or even "fairness" appear nowhere in the decision. The Court of Appeals simply adopted what it considered to be a more linguistically and logically accurate construction of the language in the statute.

This is demonstrated by the fact that the New York Court of Appeals has declined to allow the application of Feingold on collateral review, limiting its application to cases on direct appeal at the time of the decision and cases brought thereafter, see Policano v. Herbert, 7 N.Y.3d 588, 603, 859 N.E.2d 484 (2006), and federal courts are perfectly comfortable with that. Indeed, the Second Circuit has expressly held that due process does not require Feingold's application on collateral review, stating that the federal Constitution "has no voice upon the subject." Henry v. Ricks, 578 F.3d 134, 141 (2d Cir. 2009) (quoting Great N. Ry. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 364, 53 S. Ct. 145 (1932). If we were dealing with issues of due process, federal habeas relief might be available. See Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092 (1990) ("Because federal habeas corpus relief does not lie for errors of state law, federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.") (internal citations omitted).[4]

There is thus nothing constitutionally wrong with final, pre-Feingold convictions obtained under Register. Those defendants serving lengthy sentences for deliberate indifference murder have no federal constitutional complaint despite the change in the law. A defendant who has no Feingold issue because his conviction became final before Feingold, and a defendant who has no Feingold issue because his trial counsel failed to preserve it and his appellate counsel

---

[4] In the instant petition, as in his § 440.10 motion, and his reply in support of his application for leave to the New York Court of Appeals, petitioner misstated the law by contending that Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987), required application of Feingold retroactively as a matter of due process. Griffith only applies when a new federal constitutional rule is adopted, not when a state court reinterprets a state statute. See Henry v. Ricks, 578 F.3d 134, 141 (2d Cir. 2009). As shown above, Feingold was under no view a constitutional holding.

failed to raise it on appeal, are in precisely the same position. There is no more "manifest injustice" for one than the other.[5]

Here, the petitioner has pointed to no new evidence and has conceded that he murdered David Garcia. He essentially argues "not [that] the evidence of his culpability is too weak, but [that] it is too strong." Policano v. Herbert, 453 F.3d 79, 80 (2d Cir. 2006) (Raggi, J., dissenting). If anything, petitioner's claim asserts legal innocence, not factual innocence. This Court does not find that failure to consider the merits of petitioner's claim will result in manifest injustice.[6]

## CONCLUSION

For the reasons set forth above, the petition is dismissed. Because "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citation and quotation marks omitted), a certificate of appealability shall issue only with regard to the question of whether, assuming petitioner's insufficiency claim is procedurally barred, application of the procedural bar would result in

---

[5] I recognize that Judge Spatt reached a contrary conclusion in Petronio v. Walsh, --- F.Supp.2d ---, No. 09-CV-341, 2010 WL 3564269 (E.D.N.Y. Sept. 14, 2010), and granted a writ, but I respectfully disagree with that decision. It appears premised on the assumption that Register was constitutionally defective, or that the retroactivity of Feingold is constitutionally compelled, neither one of which I accept for the reasons set forth above. See also Gutierrez v. Smith, No. 06-CV-4939, 2010 WL 3855225 (E.D.N.Y. Sept. 27, 2010) (disagreeing with Petronio's definition of "actual innocence").

In addition, in Dixon v. Miller, 293 F.3d 71 (2d Cir. 2002), the Second Circuit considered the insufficiency of the evidence claim in addressing whether petitioner was actually innocent, ultimately holding that the evidence was sufficient and the miscarriage of justice exception to the procedural bar did not apply. This Court does not read Dixon as requiring such an inquiry, especially since the Second Circuit distinguished Dixon in Henry v. Ricks, 578 F.3d 134, 139-40 (2d Cir. 2009), as not dealing with retroactivity at all.

[6] Petitioner also asserts error in failure to give the second degree manslaughter charge. The failure to charge a lesser included offense does not present an issue for federal habeas review. See Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996).

manifest injustice.  See 28 U.S.C. § 2253(c).  No certificate of appealability is granted with respect to petitioner's claim alleging the trial court's failure to charge a lesser-included offense.

**SO ORDERED.**

Dated: Brooklyn, New York
      February 15, 2011

                  U.S.D.J.